JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

REBECCA SAUNDERS

## DEFENDANTS

JEWISH FEDERATION OF GREATER PHILADELPHIA

**(b)** County of Residence of First Listed Plaintiff  PHILADELPHIA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Sidney L. Gold, Esquire - The Gold Law Firm, P.C.
1835 Market St., Ste. 515, Phila, PA 19103 215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|   |   |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only) and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA")

Brief description of cause:
EMPLOYMENT DISCRIMINATION

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 150,000 IN EXCESS

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 06/10/2026 | /S/ SIDNEY L. GOLD, ESQUIRE   ATTORNEY I.D. NO. 21374 |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: ___Two Commerce Square, 2001 Market Street, Suite 2300, Philadelphia, Pennsylvania 19103.___

---

***RELATED CASE IF ANY:***  Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?          Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.*  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☒ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.*  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases:  *(Please specify)*_____
      _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| REBECCA SAUNDERS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| JEWISH FEDERATION OF | : | |
| GREATER PHILADELPHIA | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       (☑)


| | | |
|---|---|---|
| 06/10/2026 | /s/ Sidney L. Gold, Esquire | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| REBECCA SAUNDERS, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **CIVIL ACTION NO.**_____ |
| | : | |
| JEWISH FEDERATION OF | : | |
| GREATER PHILADELPHIA, | : | |
| *Defendant.* | : | |
| | : | |
| _____ | : | |

## COMPLAINT AND JURY DEMAND

**I.    PRELIMINARY STATEMENT:**

1.    This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Rebecca Saunders ("Plaintiff"), a former employee of the Defendant, Jewish Federation of Greater Philadelphia ("Defendant"), who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

2.    This action is brought under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.* ("PHRA").

**II.    JURISDICTION AND VENUE:**

3.    The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391, as Plaintiff's claims are substantively based on the ADA.

4.    The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff's claims arising under the PHRA.

5.    All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all other jurisdictional prerequisites to the maintenance of this action.  On

1

March 12, 2026, a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission and this action has been filed within ninety (90) days of receipt of said notice.

### III.  PARTIES:

6.  Plaintiff, Rebecca Saunders ("Plaintiff"), is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 1228 Spruce Street, Apt. 314, Philadelphia, Pennsylvania 19107.

7.  Defendant, Jewish Federation of Greater Philadelphia ("Defendant"), is a non-profit organization duly organized and existing under the laws of the Commonwealth of Pennsylvania, maintaining headquarters at Two Commerce Square, 2001 Market Street, Suite 2300, Philadelphia, Pennsylvania 19103.

8.  At all times relevant hereto, the Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

9.  At all times material herein, the Defendant has been a "person" and "employer" as defined by the ADA and the PHRA, and has been, and is, subject to the provisions of each said Act.

### IV.  STATEMENT OF FACTS:

10.  Plaintiff was employed by the Defendant from March 10, 2025 until February 12, 2026, the date of her termination.

11.  Throughout her employment with the Defendant, Plaintiff held the position of Program Associate in the Strategy & Impact Department.

2

12.     In the role of Program Associate, Plaintiff reported directly to Daria Barkai ("Barkai"), Program Officer, who, in turn, reported to Kelly Romirowsky ("Romirowsky"), Chief Strategy & Impact Officer.

13.     By way of background, Plaintiff is diagnosed with generalized anxiety disorder, obsessive compulsive disorder ("OCD"), and post-traumatic stress disorder ("PTSD"). Said medical conditions constitute disabilities within the meanings of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") in that they substantially impair one or more of Plaintiff's major life activities, including, but not limited to, sleeping, communicating, interacting with others, and regulating emotions.

14.     In or around early August 2025, Plaintiff disclosed her disabilities to Barkai and Romirowsky. At that time, Plaintiff was struggling with chronic nightmares and severe anxiety symptoms. Plaintiff was prescribed medication as treatment for the worsening symptoms of her disabilities, however, the same caused adverse side effects, including severe insomnia. Plaintiff disclosed her disabilities to Barkai and Romirowsky in connection with her request to leave work early on a particular date.

15.     Thereafter, the Defendant, through its agents, servants, and employees, began subjecting Plaintiff to discrimination based on her actual and/or perceived disabilities and/or record of impairment.

16.     By way of example, on or around August 11, 2025, Plaintiff was experiencing speech difficulties in connection with her disabilities during a one-on-one meeting with Barkai. Plaintiff observed Barkai sending real-time messages via WhatsApp to Romirowsky while sharing her computer screen during the meeting in which Barkai mocked Plaintiff's manner of speaking, thereby ridiculing her because of a disability symptom.

3

17. On or around September 3, 2025, Barkai witnessed Plaintiff suffer a panic attack during a one-on-one call. Plaintiff explained to Barkai that her disabilities may require that she return home from the workplace or take extra breaks when she experienced a flareup of symptoms.

18. Following the panic attack, Barkai and members of her team began subjecting Plaintiff to unjustified criticism during meetings and blaming her for matters outside of her control. Prior to Plaintiff's disclosure of her disabilities, Plaintiff had never received any criticism of her performance or negative feedback regarding her work.

19. Shortly thereafter, Plaintiff consulted with her treating medical provider about requesting disability-related accommodations at work. Plaintiff's medical provider suggested that Plaintiff contact Defendant's Human Resources Department to obtain accommodation documentation for completion.

20. On or around September 16, 2025, Plaintiff contacted Melissa Gabillon ("Gabillon"), Chief Human Resources Officer, to request disability accommodation documentation. Kim Hiller ("Hiller"), Human Resources Manager, provided the documentation to Plaintiff and Plaintiff's medical provider completed the same on or around September 19, 2025, which detailed Plaintiff's diagnosed disabilities and proposed disability accommodations.

21. On or around September 29, 2025, Plaintiff requested to meet with Gabillon to discuss her request for disability-related accommodations. Plaintiff informed Gabillon that she had completed medical documentation to support her request, but Gabillon suggested that Plaintiff hold off on submitting the same because it was "not necessary." Instead, Gabillon directed Plaintiff to schedule a meeting between Plaintiff, Gabillon, and Barkai to brainstorm ways to improve Plaintiff's workflow and time management.

4

22.    Accordingly, Plaintiff scheduled a meeting with Gabillon and Barkai for October 6, 2025. Plaintiff initially sent a calendar invitation for the meeting entitled "Workflow Discussion," but later changed the name to "Accommodations Discussion" to reflect to true purpose of the meeting.

23.    At the beginning of the meeting, Gabillon immediately asked Plaintiff why she had changed the name of the meeting, and Plaintiff responded that she wished to discuss implementing reasonable disability accommodations. Gabillon responded that reasonable disability accommodations are meant for individuals with documented disabilities or medical conditions, and that requesting disability accommodations was "a whole separate discussion" from the discussion they were having during the meeting. Gabillon also accused Plaintiff of disclosing her disabilities and requesting disability accommodations because of the performance review that Plaintiff had recently received on or around September 18, 2025, despite the fact that Plaintiff had disclosed her disabilities prior to the review. The tone of the meeting was overwhelmingly hostile and unsupportive.

24.    Following the meeting, Plaintiff requested that her medical provider submit the accommodation documentation to Gabillon as soon as possible. Plaintiff's provider submitted the same to Gabillon the same week.

25.    After receipt of the accommodation documentation from Plaintiff's medical provider, Gabillon granted Plaintiff's request to work from home as needed, but encouraged Plaintiff to use sick time and vacation time as opposed to intermittent medical leave. Plaintiff felt pressured to agree to this arrangement, as Gabillon clearly did not believe intermittent leave was needed at that time.

5

26.     Thereafter, Defendant began subjecting Plaintiff to retaliation for requesting reasonable accommodations for her disabilities.

27.     By way of example, in or around December 2025, Barkai directed Plaintiff to create manuals for completion of the grantee newsletter and adding information and tracking FY27 grantee application and compliance statuses, both tasks for which Plaintiff was responsible. When Plaintiff asked why creating these manuals was necessary, Barkai responded that they would assist the next person in her position.

28.     Moreover, on or around December 18, 2025, Barkai abruptly moved one of Plaintiff's project deadlines up from January 13 to January 5, 2026. The following day, on or around December 19, 2025, Plaintiff expressed concern with Barkai's directive given the holiday season, upcoming pre-planned time off, and the limited notice that she received, but assured the team that she would do her best to complete the project. Significantly, no urgent reason existed for moving up the deadline.

29.     On the same date, Plaintiff received recurring hostile messages via Zoom from a team member regarding Plaintiff's ability to perform her job duties in a timely manner, resulting in Plaintiff suffering a panic attack. Plaintiff called her colleague, Erica Miller ("Miller"), and asked if she could inform Romirowsky that she was experiencing a panic attack and would be temporarily unavailable.

30.     In response, Miller asked Plaintiff if she could call Gabillon because she was concerned about the way Plaintiff was being treated at work and how that treatment was impacting her. Plaintiff agreed that Miller could notify Gabillon of the situation.

31.     Shortly thereafter, Plaintiff received a call from Gabillon. When Plaintiff had difficulty speaking due to experiencing a panic attack, Gabillon told Plaintiff to get control of

herself and reprimanded her for involving Miller. Gabillon also excused the team member's behavior by citing Plaintiff's performance issues and claiming that her team members were "frustrated" with her.

32.    On or around December 19, 2025, Plaintiff registered a complaint with Gabillon based on the ongoing discriminatory and retaliatory treatment that she was experiencing. Plaintiff also sent a meeting request for December 22, 2025 to discuss her complaint as well as a renewed request for intermittent leave as a reasonable disability accommodation.

33.    On or around December 22, 2025, Plaintiff met with Gabillon and Barkai as requested. During this meeting, Gabillon stated to Plaintiff that she was in a support role and that it was her job to support the department. Gabillon expressed her belief that Barkai was "bending over backwards" to try to support Plaintiff when it was Plaintiff's job to support the department, thereby chastising Plaintiff for her disability accommodation requests. Despite Plaintiff's request to discuss intermittent medical leave, Gabillon did not allow Plaintiff an opportunity to discuss the same.

34.    Thereafter, on or around January 5, 2026, Defendant placed Plaintiff on an unjustified performance improvement plan ("PIP"). Plaintiff successfully completed all requirements of the PIP, despite the length of the same being modified from 60 to 30 days.

35.    As further discrimination, on or around January 9, 2026, during a meeting with Gabillon and Barkai, Gabillon expressed concern about Plaintiff's well-being, stating that Plaintiff frequently looked like she was about to cry in the office. Gabillon remarked that she was concerned about Plaintiff's wellness and demeanor "from a professional standpoint."

36.    On or around February 5, 2026, Plaintiff met with Gabillon to report ongoing retaliatory actions, including Barkai sending messages critiquing minor details of Plaintiff's work

7

during important team meetings, Barkai failing to attend one-on-one meetings with her, and the occurrence of team meetings to which Plaintiff was not invited during which Plaintiff was discussed. Plaintiff also reported Barkai's discriminatory behavior in August 2025 when she mocked Plaintiff's speech. When Plaintiff became emotional during this meeting while discussing the issues that she had been facing at work, Gabillon became annoyed and remarked, "Rebecca, you're an adult."

37.     One week later, on February 12, 2026, Defendant terminated Plaintiff's employment, allegedly for working unauthorized overtime without manager approval.

38.     Significantly, Plaintiff had previously worked overtime on at least six occasions without issue and without manager approval. Plaintiff understood that she could work overtime when necessary to finish projects and comply with the terms of the PIP. Moreover, members of Plaintiff's team and members of the IT Department had similarly worked overtime without repercussion.

39.     Plaintiff believes and avers that Defendant's articulated reason for Plaintiff's termination is pretextual and that Defendant actually terminated her employment based on her actual and/or perceived disabilities and/or record of impairment and in retaliation for requesting reasonable accommodations for her disabilities and opposing disability discrimination in the workplace.

## <u>COUNT I</u>
### <u>(ADA – Disability Discrimination, Failure to Accommodate, Retaliation)</u>
### <u>Plaintiff v. Defendant</u>

40.     Plaintiff incorporates by reference paragraphs 1 through 39 of this Complaint as though fully set forth at length herein.

41.     The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to discrimination based on her actual and/or perceived disabilities and/or record of impairment, failing to accommodate Plaintiff's disabilities, and retaliating against Plaintiff for requesting reasonable accommodations for her disabilities and opposing unlawful discrimination in the workplace, constituted violations of the ADA.

42.     As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff sustained permanent and irreparable harm, resulting in the termination of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

43.     As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**COUNT II**
**(PHRA – Disability Discrimination, Failure to Accommodate, Retaliation)**
**Plaintiff v. Defendant**

44.     Plaintiff incorporates by reference paragraphs 1 through 43 of this Complaint as though fully set forth at length herein.

45.     The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to discrimination based on her actual and/or perceived disabilities and/or record of impairment, failing to accommodate Plaintiff's disabilities, and retaliating against Plaintiff for requesting reasonable accommodations for her disabilities and opposing unlawful discrimination in the workplace, constituted violations of the PHRA.

9

46.     As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff has sustained permanent and irreparable harm, resulting in the termination of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

47.     As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## PRAYER FOR RELIEF

48.     Plaintiff incorporates by reference paragraphs 1 through 47 of this Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and against the Defendant, and order that:

a.     Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination and retaliation;

b.     Defendant compensate Plaintiff with an award of front pay, if appropriate;

c.     Defendant pay to Plaintiff punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

d.     Defendant pay to Plaintiff pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e.     The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.


THE GOLD LAW FIRM, P.C.

By:   /s/ Sidney L. Gold, Esquire
      SIDNEY L. GOLD, ESQUIRE
      I.D. No.:  21374
      1835 Market Street, Suite 515
      Philadelphia, PA 19103
      (215) 569-1999
      **Attorney for Plaintiff**

DATED:  06/10/2026

11

## **VERIFICATION**

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 06/09/2026

_Rebecca Saunders_
Rebecca Saunders (Jun 9, 2026 16:45:03 EDT)

REBECCA SAUNDERS, PLAINTIFF